*Attorney Grievance Commission of Maryland v. George L. Farmer*, AG No. 41, September Term, 2021. Opinion by Gould, J.

**ATTORNEY DISCIPLINE – SANCTIONS – INDEFINITE SUSPENSION**

The Court indefinitely suspended an attorney who engaged in the unauthorized practice of law, represented clients with a conflict of interest, collected and billed for fees that were unreasonable, and filed a frivolous lawsuit.  The attorney's conduct violated Maryland Attorneys' Rules of Professional Conduct: 1.4 (Communication), 1.5 (Fees), 1.7 (Conflict of Interest—General Rule), 1.16(a)(1) (Declining or Terminating Representation), 3.1 (Meritorious Claims and Contentions), 5.5(a) (Unauthorized Practice of Law; Multi-Jurisdictional Practice of Law), and 8.4(a) (Misconduct).

IN THE SUPREME COURT

OF MARYLAND*

AG No. 41

September Term, 2021

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

GEORGE L. FARMER

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Opinion by Gould, J.

_____

Filed: July 10, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

On December 1, 2021, pursuant to Maryland Rule 19-721, the Attorney Grievance Commission of Maryland (the "Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action (the "Petition") against George L. Farmer. The Petition alleged that Mr. Farmer violated the following provisions of the Maryland Attorneys' Rules of Professional Conduct ("MARPC"): [1] 1.4 (Communication) (Rule 19-301.4), 1.5 (Fees) (Rule 19-301.5), 1.7 (Conflict of Interest—General Rule) (Rule 19-301.7), 1.16(a)(1) (Declining or Terminating Representation) (Rule 19-301.16), 3.1 (Meritorious Claims and Contentions) (Rule 19-303.1), 5.5(a) (Unauthorized Practice of Law; Multi-Jurisdictional Practice of Law) (Rule 19-305.5), and 8.4(a) (Misconduct) (Rule 19-308.4).

In accordance with Maryland Rules 19-722(a) and 19-727, we assigned the Petition to the Honorable Karla N. Smith of the Circuit Court for Montgomery County (the "hearing judge") to hold an evidentiary hearing and issue findings of fact and conclusions of law.

The hearing was held virtually on May 16, 17, and 23, and June 1, 2022, via the application Zoom for Government, by consent of the parties.

Prior to the hearing, the hearing judge resolved several motions, including:

1. Mr. Farmer's Motion to Dismiss the Petition Due to Lack of Jurisdiction and Venue – Denied; and

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct, which employed the numbering format of the American Bar Association Model Rules, were renamed the MARPC and recodified without substantive modification in Title 19, Chapter 300 of the Maryland Rules. For ease of reference and comparison with our prior opinions and those of other courts, we will refer to the MARPC rules using the numbering of the model rules, as permitted by Rule 19-300.1(22) and as identified in the paragraph to which this footnote is appended.

2.  The Commission's Motion to Quash Subpoenas to Bar Counsel – Granted.

At the evidentiary hearing, the Commission presented its case with four witnesses and 46 exhibits.  Mr. Farmer testified on his own behalf and presented 14 exhibits.

On July 18, 2022, the hearing judge issued a written statement containing findings of fact and conclusions of law (the "findings"), concluding by clear and convincing evidence that Mr. Farmer violated MARPC 1.4 (Communication), 1.5 (Fees), 1.7 (Conflict of Interest—General Rule), 1.16(a)(1) (Declining or Terminating Representation), 3.1 (Meritorious Claims and Contentions), 5.5(a) (Unauthorized Practice of Law; Multi-Jurisdictional Practice of Law), and 8.4(a) (Misconduct).  The hearing judge also found one mitigating factor and five aggravating factors.

Mr. Farmer filed exceptions to multiple findings pursuant to Maryland Rule 19-728(b).  The Commission excepted to one finding.[2]

Oral argument was held before this Court on November 4, 2022.  As explained below, we overrule Mr. Farmer's exceptions and the Commission's exception, adopt the hearing judge's findings, and determine that indefinite suspension is the appropriate sanction under the facts and circumstances of this case.

---

[2] Although the Commission filed no formal or separate exceptions, in a footnote to its Recommendation for Sanction, it stated that, to the extent that the hearing judge's failure to reference a violation of Rule 8.4(b) and (c) indicated its conclusion that Mr. Farmer did not violate those rules, it excepts.

# I

## FACTS

### A. Background Facts

In 1996, Mr. Farmer was admitted to the bars of the Commonwealth of Pennsylvania and the State of New Jersey. He was admitted to the bar of the State of Colorado in 1999. He has never been a member of the Maryland bar.

In 2018, Thuan Nguyen, a family friend of Mr. Farmer, began working for Maryland resident, Louise Williams Marsh, as her full-time caretaker. At that time, Ms. Marsh was a 92-year-old widow who suffered from dementia. Ms. Marsh was represented by J. Laurence Kent, a Maryland attorney who had provided estate and trust planning services to Ms. Marsh, her late husband, Richard Wade Marsh, Sr. ("Mr. Marsh"), and their son Richard Marsh, Jr. ("Rick") for approximately three decades. In 2018, Ms. Marsh and Rick lived together in Ms. Marsh's house in Silver Spring, Maryland.

In 1988, Mr. Kent set up a trust for the Marshes (the "Trust"), which initially named Mr. Marsh and Ms. Marsh as the grantors, trustees, and beneficiaries, with Rick as the successor beneficiary. The assets of the Trust included the Marshes' Silver Spring house and various bank and brokerage accounts. The Trust's bank accounts were maintained at Sandy Spring Bank.

Mr. Marsh passed away on January 22, 2009.

After her husband passed away, Ms. Marsh succeeded her husband as the sole trustee. She amended the Trust in 2010 to name herself as the sole beneficiary during her lifetime, with Rick as the successor beneficiary upon her death. The Trust also provided

3

that if Rick predeceased Ms. Marsh, the Trust assets would pass to various charities. Under the amended Trust, Ms. Marsh continued as trustee, and Mr. Kent was named successor trustee.

In 2015, Ms. Marsh executed an amendment to the Trust prepared by Mr. Kent to provide that upon Ms. Marsh's death, if Rick was surviving, her house would pass to him free of the Trust, and the remaining assets would be held in trust for his benefit.

In late 2018 or early 2019, Ms. Nguyen and Rick were married. Ms. Nguyen moved into the residence and continued working as Ms. Marsh's paid caretaker.[3]

In 2019, Rick retained Mr. Kent for estate planning services, including preparation of his own will and power of attorney, both of which he duly executed.

In early March 2020, Rick fell ill and was hospitalized. Because Ms. Marsh was no longer able to serve as trustee, Mr. Kent assumed the trustee's duties, as provided under the 2010 amendment to the Trust. With Mr. Kent now serving as trustee, the Trust needed a new successor trustee in case something happened to Mr. Kent that rendered him unable to serve. And because Rick was unable to serve due to his declining health,[4] Mr. Kent prepared an amendment to the Trust on March 3, which Ms. Marsh signed, appointing his law partner, Helen Dankos, as successor trustee.

---

[3] The Trust paid Ms. Nguyen $2,000 per week for her caretaking services.

[4] Rick died on April 21, 2020.

4

### B. *Mr. Farmer Enters the Scene*

Ms. Nguyen was never a beneficiary of the Trust, but she was a beneficiary under Rick's will. After Ms. Marsh executed the amendment to the Trust, Ms. Nguyen reached out to her brother who notified Mr. Farmer that she needed assistance. On March 3, Ms. Nguyen spoke to Mr. Farmer, and the next day, he drove from New Jersey to Maryland to meet with Ms. Nguyen, Ms. Marsh, and Rick Marsh. Initially, Mr. Farmer met with Ms. Nguyen and Ms. Marsh at Ms. Marsh's residence. They then went to the hospital to speak with Rick. While at the hospital, Mr. Farmer asked Rick how much money was in the Trust; Rick said it held about five million dollars. Mr. Farmer then returned to New Jersey. He had several conversations with Ms. Nguyen, and she ultimately retained him to represent her.

On March 5, Mr. Farmer sent a letter to Mr. Kent titled "Louise Williams Marsh's Instructions to J. Laurence Kent, Esq.," which was drafted by Mr. Farmer and signed by Ms. Marsh in the presence of a notary public. In these instructions, Ms. Marsh told Mr. Kent to (1) rescind the power of attorney naming Mr. Kent as her agent;[5] (2) draft a new power of attorney in favor of Mr. Kent and Ms. Nguyen jointly, so that neither could act individually on her behalf; and (3) send Mr. Farmer copies of the Trust documents and Ms. Marsh's will.

On March 6, Mr. Kent visited Ms. Marsh's residence. While there, he spoke with Mr. Farmer by telephone. Mr. Kent informed Mr. Farmer that he would not provide the

---

[5] The instructions reflect a mistaken assumption that Ms. Marsh had previously signed a power of attorney appointing Mr. Kent as her agent.

requested information and documentation.  Mr. Kent contended that Mr. Farmer did not have the authority to instruct him because he was not a Maryland attorney, and Ms. Marsh "didn't have the capacity to appoint him."

Because Mr. Farmer believed that he needed to become Ms. Marsh's attorney to compel Mr. Kent to send him the Trust and will documents, on March 6, he prepared a "Legal Representation Retainer Agreement" addressed to Ms. Marsh.  The agreement was executed by Ms. Marsh, and she paid Mr. Farmer a retainer of $8,500.

The agreement was printed on letterhead from Mr. Farmer's Northfield, New Jersey office and stated, in relevant part:

> Please accept this letter as my request for me to represent your interests in reviewing Mr. Kent's prior services and documents, as well as the financial accounts including, but not limited to the documents he had you sign recently, the trust agreement(s), your will, the financial accounts, the expenditures from the accounts, etc. with the purpose of determining if there are any improprieties.
>
> By signing this retainer letter of engagement, you are authorizing me to perform these services, obtain the aforementioned documents, and take whatever steps I deem necessary (if any) to protect your interests depending upon the information I discover.
>
> In light of the fact that I represent your daughter-in-law as well, you will need to waive any conflicts that might exist as well as any appearance of conflicts. By entering into this retainer agreement, you hereby do waive said conflicts and appearance of conflicts.

On or about March 10, Ms. Nguyen executed a separate conflict of interest waiver, which stated merely that she waived any conflict of interest created by Mr. Farmer's representation of both her and Ms. Marsh.

6

On March 13, Mr. Farmer again demanded that Mr. Kent comply with the instructions in the March 5 letter and threatened an ethics complaint against Mr. Kent if he refused.

On April 7, Ms. Marsh signed a document entitled "Third Amendment to Louise W. Marsh, Second Amended and Restated Trust Agreement" (the "Third Amendment").[6] Under the Third Amendment, Ms. Marsh remained trustee, and Mr. Kent was removed as co-trustee. In Mr. Kent's place, the Third Amendment appointed one John L. Hoffmann, a CPA who happened to share Mr. Farmer's New Jersey office and with whom Mr. Farmer had a professional relationship for about twenty years. Mr. Farmer sent a copy of this amendment to Mr. Kent and broke the news that Mr. Kent was no longer co-trustee.

On April 7, Mr. Farmer sent a letter to Sandy Spring Bank declaring that any actions by Mr. Kent were "hereby ineffective" and that the Trust's money was to be transferred to a Wells Fargo account being established by Mr. Hoffmann. Sandy Spring Bank declined to follow these requests, prompting Mr. Farmer to file a complaint against the bank.[7]

---

[6] When questioned by Bar Counsel as to who drafted this Third Amendment, Mr. Farmer asserted his Fifth Amendment right against self-incrimination and did not answer the question. In addition to the adverse inference she drew from his assertion of this right, the hearing judge found that there was sufficient evidence to find that Mr. Farmer drafted the document, noting that: Mr. Farmer began purportedly representing Ms. Marsh on March 6; he came into possession of the amendment the same day that Ms. Marsh signed it; Mr. Hoffman, a person unknown to Ms. Marsh but a longtime associate of Mr. Farmer, was appointed as the new co-trustee; and Mr. Kent was not aware of this amendment until Mr. Farmer sent it to him.

[7] According to Mr. Farmer's testimony, he filed the complaint with the "Department of Banking with the state."

7

On April 9, Mr. Farmer sent a letter to Mr. Kent demanding that he cease and desist acting as co-trustee and requesting the Trust's Federal Employer Identification Number. After Mr. Kent did not respond, Mr. Farmer sent several emails to Mr. Kent requesting the Trust documents. Meanwhile, Sandy Spring Bank froze the Trust's accounts.

**C.      *Mr. Kent Files a Petition for Appointment of Guardian of the Person and Property of Ms. Marsh***

Concerned that others were trying to gain improper access to Ms. Marsh's finances, on April 17, Mr. Kent filed in the Circuit Court for Montgomery County an Emergency Petition for the Appointment of Temporary and Permanent Guardians of the Person and Property of Ms. Marsh. Mr. Kent supported his petition with a certification from Ms. Marsh's primary care physician stating that: (1) Ms. Marsh had been examined in her care for over ten years; (2) in December 2019, she determined that Ms. Marsh was suffering from severe dementia; (3) Ms. Marsh's overall mental health would decline; (4) she believed Ms. Marsh needed a guardian of her property; and (5) the dementia "prevent[ed] [Ms. Marsh] from making or communicating responsible decisions concerning her personal affairs and her property."

On April 20, the circuit court granted the emergency petition and issued four orders: (1) compelling an independent examination to determine Ms. Marsh's capacity; (2) appointing Mr. Kent as temporary guardian of Ms. Marsh's person; (3) appointing a

local attorney, Robert McCarthy, as temporary guardian of Ms. Marsh's property; and (4) appointing another local attorney, Catherine McQueen, as counsel for Ms. Marsh.[8]

Mr. McCarthy then spoke with Mr. Farmer and suggested that Mr. Farmer had a conflict of interest in representing both Ms. Marsh and Ms. Nguyen. Mr. Farmer disagreed. Mr. McCarthy also noted that Mr. Farmer was not authorized to practice law in Maryland. Mr. Farmer dismissed the concern as not a problem.

### D. Mr. Farmer's Attempt to Obtain Local Counsel

Meanwhile, Mr. Farmer was searching for a Maryland lawyer to serve as local counsel. He consulted with Zhia Shepardson and Mary Lombardo, two attorneys at the Rismiller Law Group, LLC ("Rismiller"). Initially, Rismiller agreed to sponsor Mr. Farmer's pro hac vice petition to represent Ms. Marsh and Rick in potential trust litigation. Rismiller sent a retainer agreement to Ms. Marsh and Rick, but it was never executed.

Mr. Farmer also sought Rismiller's assistance in connection with Ms. Marsh's Trust and the alleged impropriety by Mr. Kent. Rismiller initially agreed, and on April 29, sent an Attorney Fee Agreement (the "Fee Agreement") addressed to Ms. Nguyen.[9] Mr. Farmer proposed several revisions and returned the Fee Agreement to Rismiller.[10]

---

[8] Mr. Kent's petition suggested the appointments of himself and Mr. McCarthy as guardians and Ms. McQueen as counsel.

[9] The Fee Agreement indicated that the scope of the work was "Reviewing and advising pertaining to the guardianship litigation regarding Louise Marsh in Montgomery County[.]" Mr. Farmer was not mentioned in the Fee Agreement.

[10] Mr. Farmer additionally changed the address on the Fee Agreement to "Louise Williams Marsh c/o George L. Farmer," added that Rismiller would appear as local counsel

9

Ms. Shepardson and Mr. Farmer then communicated by email. Ms. Shepardson stated that "[i]f we need to loop Louise into being a client as well, then we can cross that bridge. We are simply trying to do what we need to do in order to begin review [of the documents]." Mr. Farmer said that he had no problem with Rismiller reviewing the documents but that he wanted clarification that they would appear in court, be local counsel, and sponsor his pro hac vice application. Ms. Shepardson responded: "Yes, we can still do that – we just need to review the documents to help determine exactly what it is we will be doing."

After they reviewed the documents, Rismiller informed Mr. Farmer that the firm would not undertake the representations because Ms. Marsh had a court-appointed attorney and because Ms. Nguyen lacked standing in the guardianship proceeding.

### E.    *Enforcement of the April 20 Orders*

Although one of the court's April 20 orders required Ms. Marsh to be examined by Dr. Carole Guinta for the purpose of determining her capacity, Ms. Nguyen on several occasions prevented Dr. Guinta from conducting the examination. This prompted Mr. Kent to file an emergency motion for an order requiring Ms. Nguyen to comply with the court order.

Mr. Kent then consulted with Mr. McCarthy and rescheduled the examination. On May 8, with police escorts to ensure Ms. Nguyen's compliance, Mr. Kent and Mr. McCarthy went to Ms. Marsh's home to take her to the appointment. While at the home,

for Ms. Marsh and sponsor Mr. Farmer's pro hac vice motion, and changed the agreement to indicate that Rismiller would represent Ms. Marsh and Ms. Nguyen, and not Rick.

10

Mr. McCarthy observed that Ms. Marsh looked "very childlike" and that Ms. Nguyen appeared to have moved her family into Ms. Marsh's residence. He also found a prescription bottle of Ms. Marsh's that contained several different medications as well as peanuts. Mr. Kent and Mr. McCarthy then took Ms. Marsh to her appointment with Dr. Guinta. Dr. Guinta found Ms. Marsh to be severely impaired and in need of a guardian of her person and property.

On May 1, Ms. McQueen filed an emergency motion for a hearing on the court's appointment of a temporary guardian of Ms. Marsh's person and property because the appointments had been made without the hearing required under Maryland Rules 10-205(b), 10-212, and 10-304.

## F. *Mr. Farmer's Motions*

In response, on May 8, Mr. Farmer filed two motions: one on behalf of Ms. Marsh to dismiss Ms. McQueen's emergency petition, vacate the April 20 orders, and award attorneys' fees due to the bad faith filing of the petition (the "Motion to Dismiss"); and the second, a motion for admission pro hac vice as Ms. Marsh's counsel. Mr. Farmer filed the pro hac vice motion on his own, without the sponsorship of a Maryland-licensed attorney. In the Motion to Dismiss, Mr. Farmer also claimed that Ms. McQueen's appointment was unnecessary because he was already representing Ms. Marsh. Mr. Farmer further alleged that Mr. Kent was engaged in significant misconduct that was harming Ms. Marsh.

Mr. Farmer then sent Mr. McCarthy a letter accusing both him and Mr. Kent of misconduct, including kidnapping Ms. Marsh by taking her to her court-ordered medical appointment. Mr. Farmer also filed a letter with the court on Ms. Marsh's behalf,

11

requesting that the court hear the motions on an expedited basis, citing Ms. Marsh's poor health, Mr. Kent's alleged misconduct, and alleged collusion between Mr. Kent and Dr. Guinta.

On May 18, Ms. Nguyen filed a motion that purported to be *pro se*, requesting that the court dismiss the petition, vacate the court's April 20 orders, and appoint her as the sole decision-maker pertaining to Ms. Marsh's health care. When questioned as to who drafted this motion, Mr. Farmer again asserted his Fifth Amendment rights against self-incrimination. The hearing judge found that Mr. Farmer either drafted or assisted in drafting the motion, noting among other things, the similarity in style and format to the Motion to Dismiss.

On May 20, Ms. McQueen filed a motion requesting that the court strike the Motion to Dismiss.

A hearing on the pending motions was held on May 20. The court denied Mr. Farmer's pro hac vice motion with prejudice and denied the Motion to Dismiss. The court found that Ms. Marsh was represented by Ms. McQueen, and, as a result, ruled that Mr. Farmer was prohibited from communicating with her.

### G.      *Mr. Farmer's Request for Fees*

After the hearing, Mr. Farmer presented Mr. McCarthy with an invoice in the amount of $158,589.18 for expenses and for "legal services" purportedly rendered on behalf of Ms. Marsh between March 2020 and May 2020. Mr. McCarthy refused to pay Mr. Farmer.

## H. *The Federal Complaint*

On June 12, Mr. Farmer filed a complaint in the United States District Court for the District of Maryland against Mr. Kent, Mr. Kent's law partner, and their law firm, alleging tortious interference with contract, tortious interference with economic relationship, legal malpractice, and "willful and malicious acts," all based on his relationship and agreement with Ms. Marsh. Mr. Kent and the other defendants moved to dismiss the complaint.

On February 23, 2021, the court dismissed the complaint with prejudice. he court held that because Mr. Farmer was not licensed to practice law in Maryland, his retainer agreement with Ms. Marsh was invalid and against public policy. Additionally, the court found that Mr. Farmer's claim that Mr. Kent was engaged in willful and malicious acts was "not grounded in any cognizable common law tort under Maryland law."

## II

## STANDARD OF REVIEW

This Court has original jurisdiction over attorney discipline proceedings and conducts an independent review of the hearing judge's findings of fact and conclusions of law. *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 178 (2015). We review the hearing judge's conclusions of law without deference. Md. Rule 19-740(b)(1).

Either party may file exceptions to the hearing judge's findings of fact or conclusions of law. Md. Rule 19-728(b). We may treat any facts not challenged by exceptions as established. Md. Rule 19-740(b)(2)(A). "If exceptions are filed," we determine "whether the findings of fact have been proved by the requisite standard of proof set out in Rule 19-727(c)." Md. Rule 19-740(b)(2)(B).

13

Under Rule 19-727(c), the Commission must prove its allegations of misconduct by clear and convincing evidence. As we stated in *Attorney Grievance Comm'n v. Johnson*, 472 Md. 491, 526 (2021) (citations omitted):

> If a party excepts to the hearing judge's findings, this Court "shall determine whether the findings of fact have been proved by the requisite standard of proof set out in Rule 19-727(c)." . . . "We may confine our review to the findings of fact challenged by the exceptions, mindful though, that the hearing judge is afforded due regard to assess the credibility of witnesses." . . . This Court will not disturb the hearing judge's findings "where 'there is any competent evidence to support the' finding of fact." . . . Therefore, "[i]f the hearing judge's factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled." . . .

In contrast, the respondent must prove any affirmative defenses and any mitigating or extenuating factors by a preponderance of the evidence. Md. Rule 19-727(c).

### III

### DISCUSSION

In one form or another, through general or specific allegations, Mr. Farmer excepted to virtually every adverse factual finding made by the hearing judge. Fortunately, the hearing judge meticulously supported each factual finding with citations to the relevant portions of the transcript and exhibits. We have independently reviewed the record and conclude that none of the hearing judge's factual findings are clearly erroneous. To the extent that Mr. Farmer excepts to any of the factual findings not specifically discussed

below, such exceptions are overruled.[11] The Commission did not file any exceptions to the hearing judge's factual findings.

## A. *General Exceptions*

Mr. Farmer excepts to the introduction section of the hearing judge's findings, contending that she failed to consider his side of the story and that she admitted and credited hearsay. Mr. Farmer claims the hearing judge was biased against him, disregarded his arguments, defenses, and testimony, and rubber-stamped the Commission's submissions. He also contends that the hearing judge's decision lacked "normalcy, reasonableness, and compassion." These exceptions lack merit and are summarily overruled.

Mr. Farmer also criticizes Bar Counsel. He contends that Bar Counsel had unclean hands by pressing charges against him while ignoring the alleged misdeeds of Mr. Kent. Mr. Farmer also contends that Bar Counsel pursued this matter as retaliation for the ethics complaint he filed against Mr. Kent. Further, Mr. Farmer contends that he was denied due process because he was not allowed to elicit testimony from Bar Counsel about its relationship to Mr. Kent and its motivation in investigating him. We summarily overrule these baseless objections as well.

---

[11] Mr. Farmer's exceptions, especially as to the factual findings, are disjointed, rambling, and repetitive. We have consolidated the exceptions, as appropriate.

## B.    Exceptions to the Hearing Judge's Factual Findings

### 1.  Thoroughness of the Findings.

Mr. Farmer complains that the hearing judge's factual findings are incomplete and omit key information.[12]   A judge is not required to specifically mention each piece of evidence in its findings, and the failure to do so does not indicate  a failure to consider the evidence.  *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 599 (2016) (quoting *Attorney Grievance Comm'n v. Vanderline*, 364 Md. 376, 385 (2001)).  Further, a judge is free to disregard any testimony she deems not credible.  *Id.*  We therefore overrule this exception.

### 2.  *Exceptions to the Finding that Mr. Farmer Represented Ms. Nguyen*

Mr. Farmer excepts to the finding that he represented Ms. Nguyen.  According to Mr. Farmer, "[t]he hearing judge fails to mention the most important aspect of [his] representation of [Ms. Nguyen]: the scope of my representation."  Mr. Farmer contends that he was supposed to assist Ms. Nguyen "in her efforts to find out what Mr. Kent was up to, and to see if he had done anything improper with respect to her mother in law, Mrs. Marsh."

The record is replete with evidence that Mr. Farmer represented Ms. Nguyen.  His retainer agreement with Ms. Marsh says that he represented Ms. Nguyen.  The conflict of interest waiver he had Ms. Nguyen sign says that he had been representing Ms. Nguyen

---

[12] For example, Mr. Farmer contends that the hearing judge failed to mention Ms. Nguyen's education, the motivation for Mr. Kent's allegedly wrongful actions, including his motivation for filing the emergency petition, and that Mr. Farmer sent the March 5, 2020 letter before he was retained.

16

and would continue to do so. The complaint he filed in federal court said he represented Ms. Nguyen. We overrule Mr. Farmer's exception.

### 3. *Exception to the Finding that the Instructions were Drafted by Mr. Farmer*

Mr. Farmer excepts to the hearing judge's finding that the instructions to Mr. Kent in his March 5 letter emanated from him. He contends that that he was only a conduit for Ms. Marsh and that he only typed up Ms. Marsh's instructions because she was blind. We are unpersuaded. In 2019, Ms. Marsh was evaluated by a physician who found that she suffered from severe dementia and that her condition would decline. On May 8, 2020, Dr. Guinta examined her and concluded that she had a "Major Neurocognitive Disorder (Dementia) due to Alzheimer's Disease." The hearing judge's finding that Mr. Farmer drafted the instructions was not clearly erroneous. We overrule this exception.

### 4. *Exception to the Finding that Mr. Farmer Drafted the Third Amendment*

Mr. Farmer excepts to the hearing judge's finding that he drafted the Third Amendment—the amendment that, among other things, named his New Jersey office suitemate as successor trustee. Mr. Farmer complains that the hearing judge based this finding solely on an adverse inference drawn from his assertion of his Fifth Amendment privilege against self-incrimination, and contends that there is no evidence he drafted the amendment. This exception is without merit.

*First*, because this is not a criminal matter, the hearing judge was entitled to draw an adverse inference from Mr. Farmer's assertion of his Fifth Amendment right. *See Robinson v. Robinson*, 328 Md. 507, 515-16 (1992). *Second*, the hearing judge cited to substantial evidence to support her conclusion that Mr. Farmer drafted the Third

17

Amendment. Specifically, Mr. Farmer began purportedly representing Ms. Marsh on March 6, and Mr. Farmer came into possession of the Third Amendment on April 7, the same day Ms. Marsh signed it. The co-trustee appointed in the Third Amendment, Mr. Hoffman, happens to share an office with Mr. Farmer in New Jersey. And Mr. Kent, who had represented the Marsh family for over 30 years, was not aware of this amendment until Mr. Farmer—not some other unknown lawyer—sent it to him. We note further that Mr. Farmer's redacted invoice for April indicates that on April 6 and 7, he drafted a status letter and then prepared something[13] that took him 4.5 hours. The inferences the hearing judge drew from such evidence are logical, sound, and well-reasoned. *See Attorney Grievance Comm'n v. Ross*, 428 Md. 50, 87 (2012); *Attorney Grievance Comm'n v. Hekyong Pak*, 400 Md. 567, 608 (2007). Accordingly, we overrule this exception.

5. *Exception to the Finding that Ms. Marsh was Incompetent*

Mr. Farmer excepts to the hearing judge's finding that Ms. Marsh was incompetent, claiming that a determination of her competency on May 8 was irrelevant to her mental capacity two months prior, when she entered into the retainer agreement with him. The evidence before the hearing judge included two certifications, one dated before Ms. Marsh signed the retainer agreement and one dated after, signed by a physician and psychologist who each examined Ms. Marsh, both of which support the hearing judge's finding. We overrule this exception.

---

[13] Mr. Farmer redacted that little detail.

18

*C.* ***Exceptions to the Hearing Judge's Conclusions of Law***

From the foregoing factual findings, the hearing judge found by clear and convincing evidence that Mr. Farmer violated MARPC 1.4 (Communication), 1.5 (Fees), 1.7 (Conflict of Interest—General Rule), 1.16(a)(1) (Declining or Terminating Representation), 3.1 (Meritorious Claims and Contentions), 5.5(a) (Unauthorized Practice of Law; Multi-Jurisdictional Practice of Law), and 8.4(a) (Misconduct). Mr. Farmer excepts to each conclusion.

As noted above, we review all conclusions of law without deference. We conclude that the hearing judge's conclusions are supported by clear and convincing evidence and therefore overrule Mr. Farmer's exceptions.

*1. Mr. Farmer Violated Multiple Rules of Professional Conduct by Representing Clients With Conflicting Interests*

Mr. Farmer violated three different rules of professional conduct, MARPC 1.4, 1.7, and 1.16(a)(1), when he represented both Ms. Nguyen and Ms. Marsh, two clients with conflicting interests.

MARPC 1.4 provides:

(a) An attorney shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0(g) (1.0), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.
(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

19

This Rule is violated when an attorney undertakes joint representation of clients but fails to explain a potential conflict of interest. *Attorney Grievance Comm'n v. Olszewski*, 441 Md. 248, 267 (2015).

MARPC 1.7 provides:

(a) Except as provided in section (b) of this Rule, an attorney shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if:
    (1) the representation of one client will be directly adverse to another client; or
    (2) there is a significant risk that the representation of one or more clients will be materially limited by the attorney's responsibilities to another client, a former client or a third person or by a personal interest of the attorney.
(b) Notwithstanding the existence of a conflict of interest under section (a) of this Rule, an attorney may represent a client if:
    (1) the attorney reasonably believes that the attorney will be able to provide competent and diligent representation to each affected client;
    (2) the representation is not prohibited by law;
    (3) the representation does not involve the assertion of a claim by one client against another client represented by the attorney in the same litigation or other proceeding before a tribunal; and
    (4) each affected client gives informed consent, confirmed in writing.

Under MARPC 1.7, a conflict of interest exists in a dual representation if the parties have adverse competing interests. *See Olszewski*, 441 Md. at 257.

MARPC 1.16(a)(1) provides: "Except as stated in section (c) of this Rule, an attorney shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: the representation will result in violation of the Maryland Attorneys' Rules of Professional Conduct or other law[.]"

The hearing judge found conflicts of interest with respect to both the guardianship proceedings and the Trust. According to the hearing judge, at the inception of the dual

20

representation, Mr. Farmer should have recognized "the impropriety of representing both Ms. Marsh, who needed funds from the Trust for her daily needs and medical care, and Ms. Nguyen, who wanted control of the Trust for her own benefit. Those two interests were diametrically opposed to each other."

The hearing judge concluded that Mr. Farmer violated MARPC 1.4(a)(1) and (b) "when he failed to adequately explain the conflict of interest presented by his dual representation of Ms. Marsh and Ms. Nguyen." According to the hearing judge, at most, Mr. Farmer explained to Ms. Nguyen and Ms. Marsh that a potential conflict existed arising from the fact that Ms. Nguyen was Ms. Marsh's daughter-in-law. He failed to explain the significant conflicts involved because he contended that no conflict existed. The hearing judge further concluded that Mr. Farmer's "insistence on gaining *pro hac vice* admission to represent Ms. Marsh in the guardianship proceeding while he continued to represent Ms. Nguyen, indicates" either that he was not fully aware of the conflict of interest or chose to ignore it.

The hearing judge concluded that Mr. Farmer violated MARPC 1.7(a)(1) by representing directly adverse parties in the guardianship proceedings. Mr. Farmer drafted or helped draft a motion on behalf of Ms. Nguyen that sought to place Ms. Marsh under her care while simultaneously representing the alleged disabled person. According to the hearing judge, this motion demonstrated that Ms. Nguyen's interests were directly adverse to those of Ms. Marsh, and therefore, that the conflict was not waivable.

Similarly, the hearing judge found that Mr. Farmer's representation of both Ms. Nguyen and Ms. Marsh with regard to the Trust violated MARPC 1.7(a)(2) because:

21

there was a "significant risk" from the outset that [his] representation of Ms. Marsh would be "materially limited" by his representation of Ms. Nguyen. Ms. Marsh needed funds from the Trust for her own support, particularly as her mental and physical health declined in her advanced age. Meanwhile, the evidence and testimony produced during the hearing demonstrates Ms. Nguyen, who was not a beneficiary of the Trust, sought to assert control over the Trust for her own benefit.

The hearing judge also found that as to the Trust, Ms. Marsh's court-appointed attorney, Ms. McQueen, informed the court that Ms. Marsh desired a guardian of her person or property, contrary to Mr. Farmer's contention.

The hearing judge concluded that Mr. Farmer violated MARPC 1.16(a)(1) because "his representation of Ms. Marsh and Ms. Nguyen could not be performed without violating the MARPC or other law." Specifically, his representation was tainted by an unwaivable conflict of interest and because he was not authorized to practice law in Maryland.

Mr. Farmer excepts to these conclusions, reiterating his claim that there was no conflict, contending that the conclusions were based on erroneous findings of fact, and asserting that Ms. McQueen never stated that Ms. Marsh desired a guardian. He further denies that he drafted or assisted in drafting the motion on behalf of Ms. Nguyen, and contends that, even if he did, any conflict was resolved in the waivers that Ms. Marsh and Ms. Nguyen signed.[14]

---

[14] It is noteworthy that, although Mr. Farmer contends that there was no conflict in the dual representation of both Ms. Marsh and Ms. Nguyen, the record reflects that Mr. Farmer billed only Ms. Marsh for his services, and not Ms. Nguyen, even though the first charge on the invoice was for his travel to Maryland on March 4, before he had any contact with Ms. Marsh.

22

As noted above, the hearing judge's factual findings were amply supported by the record, thus, the conclusions based on such findings are sustained. Mr. Farmer's exceptions are overruled. *See Attorney Grievance Comm'n v. Neverdon*, 473 Md. 631, 686 (2021) (finding that the attorney's failure to withdraw, despite a conflict of interest, violated MARPC 1.7 and 1.16(a)(1)).

2. *MARPC 1.5 (Fees)*

MARPC 1.5 provides, in relevant part:

(a) An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and
> (8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the attorney will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

The hearing judge concluded that Mr. Farmer violated this Rule by collecting the $8,500.00 retainer fee from Ms. Marsh and billing her $158,589.18 for legal services.

23

As to the $8,500.00 retainer, the hearing judge noted that although that amount initially may have been reasonable, it became unreasonable because of Mr. Farmer's "unauthorized practice of law and failure to perform any services of benefit on behalf of Ms. Marsh." We agree. Regardless of whether an initial retainer was a reasonable amount, the fee can become unreasonable if the attorney does not perform the anticipated services. *Attorney Grievance Comm'n v. Planta*, 467 Md. 319, 350-51 (2020); *Attorney Grievance Comm'n v. Barton*, 442 Md. 91, 131 (2015); *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 224 (2012); *Attorney Grievance Comm'n v. Patterson*, 421 Md. 708, 732 (2011) (an attorney's lack of diligence and competence may cause a fee to be unreasonable at the conclusion of representation). Here, because of the conflict of interest inherent in his representation and that he was not authorized to practice law in Maryland, Mr. Farmer could not lawfully perform the services for which he charged Ms. Marsh. As such, clear and convincing evidence supported the hearing judge's conclusion that Mr. Farmer violated Rule 1.5 by collecting and retaining the $8,500 retainer.

The hearing judge further concluded that the $158,589.18 charge was unreasonable because Mr. Farmer charged Ms. Marsh for services allegedly rendered while engaging in the unauthorized practice of law. According to the hearing judge, most of Mr. Farmer's time was spent on phone calls, emails, texts, and other communications to redacted parties. Thus, Mr. Farmer "billed Ms. Marsh over $150,000.00 for the purposes of conducting baseless persecutions against her longtime attorney and bank, while seeking to assert control over her Trust. None of Respondent's actions therefore represent any meaningful legal services taken for the benefit of Ms. Marsh."

24

The hearing judge noted that Mr. Farmer spent over 416 hours at a total cost of more than $160,000.00 without obtaining a single result for Ms. Marsh. As the hearing judge observed:

> During this time, [he] drafted a single estate planning document, prepared for a single hearing, in which Ms. Marsh already had court-appointed counsel, requested records from a single bank, and otherwise persecuted Mr. Kent. Respondent had no prior relationship with Ms. Marsh, and lacked any experience in Maryland guardianship or trust law. With respect to [Mr. Farmer's] $400.00 hourly fee, while the AGC did not put forward a fee customarily charged in Montgomery County, the Court notes Mr. McCarthy, a guardianship attorney with twenty four years of experience in Maryland guardianship law, testified that he only charges $325.00 an hour.

Mr. Farmer excepts to this conclusion, arguing that the hearing judge was biased against him, that he could not have violated the rule on legal fees because he provided non-legal services, that the litigation against Mr. Kent was justified, and that the fees would not have been considered unreasonable had he recovered money from Mr. Kent. We overrule these objections.

The hearing judge correctly concluded that Mr. Farmer violated this Rule by charging $158,589.18, representing 416.3 hours of "legal services" provided over a three-month period, plus $569.18 in expenses for travel, copying, postage, and flash drives. For the period of April 18, 2020, through May 20, 2020 alone, Mr. Farmer billed Ms. Marsh $105,258.88 for 262.4 hours.[15] Mr. Farmer testified that his time was spent pursuing Mr. Kent, attempting to obtain Ms. Marsh's bank records, filing a complaint against Ms.

---

[15] During that time period, Mr. Farmer's time sheets reflect multiple entries for the same date, including 19 separate entries for April 21, 2020, 12 separate entries for April 22, 2020, and 15 separate entries for April 27, 2020.

25

Marsh's bank, filing an ethics complaint against Mr. Kent, and other miscellaneous activities.

Mr. Farmer's contention that he escapes application of Rule 1.5 on the theory that he provided non-legal services is frivolous. His invoice, which says "Legal Services Rendered," sent under a cover letter on his "Attorney at Law" stationary, indicates otherwise. The rate he charged, which he defended as reasonable based on his experience as an attorney, indicates otherwise. His fee agreement with Ms. Marsh, which says that he would review Mr. Kent's work, indicates otherwise. Clear and convincing evidence thus supports the conclusion that Mr. Farmer violated Rule 1.5. Accordingly, we overrule Mr. Farmer's exceptions.

*3. MARPC 3.1 (Meritorious Claims and Contentions)*

MARPC 3.1 provides:

An attorney shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. An attorney may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

This Rule "can be violated when an attorney utilizes a legal process 'merely [as] a device to apply pressure to the other part[y]' in 'an effort to extract legal fees by any means.'" *Attorney Grievance Comm'n v. Conwell*, 462 Md. 437, 467 (2019) (internal quotation marks omitted).

Here, the hearing judge concluded by clear and convincing evidence that Mr. Farmer violated this Rule when he filed the frivolous lawsuit in federal court against Mr.

26

Kent and his firm, concluding that Mr. Farmer filed the lawsuit "to bully Mr. Kent into compliance in furtherance of [Mr. Farmer's] agenda."

Mr. Farmer excepts to this conclusion, claiming that the violation was not established through clear and convincing evidence. He contends that the lawsuit was not frivolous, and once again maintains that his retainer was to provide non-legal services, and that the work he performed was not the practice of law.

Contrary to these contentions, in his federal complaint, Mr. Farmer alleged that "he represented [Ms. Nguyen]," that he had a retainer agreement with Ms. Marsh "to represent her, and among other things, to conduct the investigation to which she previously had authorized defendant Kent to provide documentation," and that Mr. Kent interfered with his "performance of his duties under the contract plaintiff had with Ms. Marsh." The complaint further states that he "presented his invoice for the legal services he provided for Mrs. Marsh[.]"

Moreover, in his federal complaint, Mr. Farmer alleged that Ms. Nguyen "retained [his] services," that he "entered into a written retainer agreement with Mrs. Marsh whereby he received authorization from Mrs. Marsh to represent her[,]" that Mr. Kent acted wrongfully by "not inform[ing] his attorney that [Mr. Farmer] represented Mrs. Marsh, and thus should be served with a copy of the pleadings," and that Mr. Kent interfered with his contract to represent Ms. Marsh. Mr. Farmer's exceptions are baseless, and, as such, are overruled.

27

4. *MARPC 5.5 (Unauthorized Practice of Law; Multi-Jurisdictional Practice of Law)*

MARPC 5.5(a) provides:

An attorney shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

According to the hearing judge, because Mr. Farmer conceded that he was never admitted to practice law in Maryland, the question before her was whether Mr. Farmer did, in fact, practice law in Maryland. She concluded that clear and convincing evidence established that he did. As stated by the hearing judge:

Under Md. Code Ann., Bus. Occ. & Prof. 10-101(h)(1), practicing law includes (i) giving legal advice; (ii) representing another person before a unit of the State government or of a political subdivision; or (iii) performing any other service that the Court of Appeals defines as practicing law. To determine whether an individual has engaged in the practice of law, the focus of the inquiry is on "whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." . . .

The Court readily concludes [Mr. Farmer] engaged in the practice of law almost immediately upon setting foot in the State of Maryland. For instance, the March 5, 2020 letter from Respondent to Mr. Kent indicates Respondent advised Ms. Marsh on legal matters including her power of attorney, the Trust, and Ms. Marsh's will, and proceeded to take legal action on behalf of Ms. Marsh by sending a letter to Mr. Kent identifying Respondent as an attorney at law. This legal action Respondent purportedly took on behalf of Ms. Marsh was in accordance with the "Legal Representation Retainer Agreement" Ms. Marsh signed on March 6, 2020. Respondent proceeded to request records from Ms. Marsh's bank while identifying himself as her attorney.

Respondent further engaged in the practice of law on April 7, 2020 when he drafted the Third Amendment to the Trust. Then, Respondent filed multiple motions in the Montgomery County Circuit Court on behalf of Ms. Marsh and Ms. Nguyen. Respondent finally concluded his work in Maryland by submitting an invoice to Ms. Marsh for "legal services rendered." Throughout the foregoing events, Respondent was engaged in the practice of

28

law in Maryland. Respondent provided legal advice, drafted Trust documents, and even filed several motions in ongoing litigation. Respondent's attempt to argue the foregoing does not constitute the practice of law is simply incredible.

(Footnotes omitted).

Mr. Farmer excepts to this conclusion, claiming that the hearing judge did not state how any of the incidents referenced constituted the practice of law and contending that none do. He further argues that his conduct did not violate the Rule because he anticipated being admitted pro hac vice and that he should not be faulted just because the software he uses automatically says, "Legal Services Rendered."

To determine whether an individual engaged in the unauthorized practice of law, we focus "on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." *Attorney Grievance Comm'n v. Tanko*, 427 Md. 15, 45 (2012) (internal quotation marks omitted). Examples of activities we have held constitute the practice of law are preparing or interpreting legal documents and "the giving of legal advice, or the application of legal principles to problems of any complexity[.]" *Attorney Grievance Comm'n v. Lang*, 461 Md. 1, 33 (2018) (quoting *Attorney Grievance Comm'n v. Hallmon*, 343 Md. 390, 397 (1996)).

We need not scrutinize every service listed on his invoices to conclude that, at a minimum, Mr. Farmer engaged in the unauthorized practice of law when he filed the motions in the Circuit Court for Montgomery County. Mr. Farmer responds to this charge by insisting that under Rule 19-217(d), he was permitted to move for admission pro hac

vice without a sponsoring member of the Maryland bar.  Mr. Farmer is simply wrong.  Rule

19-217(d) provides:

> An attorney specially admitted pursuant to this Rule may act only as co-
> counsel for a party represented by an attorney of record in the action who is
> admitted to practice in this State.  The specially admitted attorney may
> participate in the court or administrative proceedings only when
> accompanied by the Maryland attorney, unless the latter's presence is waived
> by the judge or administrative hearing officer presiding over the action.  An
> attorney specially admitted is subject to the Maryland Attorneys' Rules of
> Professional Conduct during the pendency of the action or arbitration.

The plain language of this Rule states that the judge or administrative hearing judge

may waive only the requirement that the Maryland attorney be present during proceedings;

nowhere does this Rule provide that an out-of-state attorney may sponsor himself for

admission.

That Mr. Farmer was hoping or anticipating that he would be admitted pro hac vice

without obtaining a sponsor does not absolve him of this violation.[16]  Accordingly, on this

---

[16] Section 10-215 of the Business Occupations and Professions Article of the
Annotated Code of Maryland (2014, 2021 Repl. Vol.) provides:

> (a) Subject to subsections (b) and (c) of this section, on a motion filed as
> required by rules adopted by the Court of Appeals, a court may grant special
> admission to practice law in a particular case to an individual who is:
> > (1) admitted to the bar of another state; and
> > (2) employed by a party in the case before:
> > > (i) a court or other unit of the State government; or
> > > (ii) a unit of a political subdivision of the State.
> (b) A special admission to practice law may be granted only:
> > (1) by the court hearing the case for which an individual requests the
> > special admission; or
> > (2) if the case is before a unit other than a court, by:
> > > (i) the circuit court for the county where the unit has its
> > > principal office; or

basis alone, we overrule his exception to the hearing judge's conclusion that he violated Rule 5.5.

 *5. MARPC 8.4 (Misconduct)*

MARPC 8.4 states:

> It is professional misconduct for an attorney to:
>
> (a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> (b) commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects;
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

An attorney violates Rule 8.4(a) when "he or she violates any other Rule under the MARPC." *Attorney Grievance Comm'n v. Hoerauf*, 469 Md. 179, 214 (2020) (citation omitted). The hearing judge found that clear and convincing evidence supported a finding that Mr. Farmer violated Rule 8.4(a) because he violated six other MARPC rules. According to the hearing judge, "[t]he number and significance of [Mr. Farmer's] violations of the preceding six rules necessarily means he engaged in misconduct and therefore violated this provision as well."

Mr. Farmer excepts to this conclusion, reiterating his unsupported claim that Mr. Kent was the attorney who violated the rules and not him. Because we have concluded

---

   (ii) any circuit court to which the case may be appealed.
(c) An individual may practice law under this section only in connection with the case for which the special admission is granted.
(d) An individual who practices law under this section is subject to disciplinary proceedings as the Maryland Rules provide.

that Mr. Farmer violated multiple rules of conduct, we conclude that he also violated Rule 8.4(a) and overrule his exception.

### D.    *Petitioner's Exception*

The hearing judge made no finding as to whether Mr. Farmer violated any subsection of Rule 8.4 other than subsection (a). In a footnote to its Recommendation for Sanction, the Commission states:

> The hearing judge did not articulate which section(s) of Rule 8.4 were found to have been violated. The Rule 8.4(b) and (c) charges were based entirely on the unauthorized practice of law. *See* Petitioner's Proposed Findings of Fact and Conclusions of Law at 35 citing *Att'y Griev. Comm'n v. Shryock*, 408 Md. 105, 124 (2009) (concluding that attorney who engaged in the unauthorized practice of law committed a criminal act that constitutes a violation of Rule 8.4(b) and (c)). To the extent this Court finds that the hearing judge concluded the Respondent did not violate Rule 8.4(b) and (c), the Petitioner excepts.

It is unclear whether the hearing judge failed to make a finding as to whether Mr. Farmer violated Rules 8.4(b) and (c) or whether the hearing judge concluded that Mr. Farmer did not violate these subsections. We note, however, that the hearing judge viewed as a mitigating factor the fact that Mr. Farmer at least attempted to be admitted pro hac vice and advised his clients that he was not authorized to practice in Maryland. Nevertheless, because resolution of the matter would not affect the sanction in this case, we decline to address the Commission's exception.

### E.    *Remedial Action Taken by Mr. Farmer*

The hearing judge found no evidence that Mr. Farmer took any remedial action to cure his misconduct: he did not return the $8,500 retainer fee, recant his accusations against Mr. Kent and Sandy Spring Bank, or help clarify for Ms. Marsh that she was represented

32

by Ms. McQueen and not him. The hearing judge found that Mr. Farmer instead "doubled down on his ethical violations by filing an entirely frivolous lawsuit against Mr. Kent for the purpose of regaining access to Ms. Marsh."

Mr. Farmer excepts to this finding, reiterating his claims against Mr. Kent and his accusations of bias by the hearing judge. He further argues that "[t]here can be no dispute that [he] expended a considerable amount of time trying to assist Mrs. Marsh" and that he represented Ms. Marsh.

These exceptions are without merit. The hearing judge's findings were supported by the record. We overrule these exceptions.

## F.     *Mitigating Factors*

We recognize the following mitigating factors in considering the appropriate sanction:

> (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to [the Commission] or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the M[A]RPC; and (14) unlikelihood of repetition of the misconduct.

33

*Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 277-78 (2016) (quoting *Attorney Grievance Comm'n v. Shuler*, 443 Md. 494, 507 (2015)).

The hearing judge found one potential mitigating factor: that Mr. Farmer made a good faith effort to be admitted pro hac vice and informed his clients that he was not licensed to practice law in Maryland. However, the hearing judge tempered her finding by stating that these actions were "somewhat tainted . . . by the fact that [Mr. Farmer] failed to withdraw his representation after failing to gain admission, sought to bill Ms. Marsh for his unauthorized practice of law, and agreed to represent both Ms. Marsh and Ms. Nguyen despite the clear conflicts of interest."

In his exceptions, Mr. Farmer contends that there was no process to withdraw as he had never been admitted and that he ceased representing Ms. Marsh and Ms. Nguyen once his petition for admission pro hac vice was denied. We overrule this meritless exception.

## G.    *Exceptions to the Hearing Judge's Aggravating Factors*

The Court considers the following aggravating factors:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [MARPC]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 275 (2018).

The hearing judge found five aggravating factors: (1) prior attorney discipline; (2) a pattern of misconduct; (3) refusal to acknowledge the misconduct's wrongful nature; (4) the victim's vulnerability; and (5) substantial experience in the practice of law.

In his exceptions, Mr. Farmer argues that his prior disciplinary actions were not related to this case, that one disciplinary matter in two months cannot constitute a pattern, and that he did not practice law in Maryland. We overrule those exceptions. That there have been prior disciplinary actions is an aggravating factor; there is no requirement that the prior disciplinary actions relate to the current charge.

Moreover, the hearing judge's factual findings reveal a pattern of misconduct. A pattern of misconduct can be demonstrated "by multiple violations over time, or a series of acts with one goal." *Sperling*, 459 Md. at 276. In *Attorney Grievance Comm'n v. Coppola*, 419 Md. 370, 406 (2011), we noted that an attorney's actions formed a pattern of misconduct, notwithstanding the fact that he engaged in a series of acts over only a number of days.

Here, Mr. Farmer engaged in a series of wrongful acts over a period of a few months. Those acts included representing Ms. Nguyen and Ms. Marsh despite a clear conflict of interest, making frivolous accusations against Mr. Kent and Sandy Spring Bank, retaining the $8,500 retainer to which he was not entitled, and billing Ms. Marsh over $150,000 for services allegedly rendered while engaging in the unauthorized practice of law. A pattern of misconduct was established by clear and convincing evidence. As such, we overrule Mr. Farmer's exceptions to the hearing judge's aggravating factors.

35

### H.    Mr. Farmer's Defenses

Mr. Farmer raises several defenses, each of which were addressed by the hearing judge.  We will take each in turn.

Mr. Farmer argues that this Court lacks subject matter jurisdiction and personal jurisdiction.  Relatedly, he claims that this action was initiated in the wrong venue.  These defenses are without merit.  This Court has "'original and complete' jurisdiction over attorney discipline proceedings arising out of conduct alleged to have occurred anywhere in Maryland." *Attorney Grievance Comm'n v. Sucklal*, 418 Md. 1, 5 (2011).  This Court's jurisdiction is grounded in Article IV, Section 18 of the Maryland Constitution,[17] Section

---

[17] Section 18 of Article IV of the Maryland Constitution provides:

(a) The Supreme Court of Maryland from time to time shall adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Supreme Court of Maryland or otherwise by law. The power of courts other than the Supreme Court of Maryland to make rules of practice and procedure, or administrative rules, shall be subject to the rules and regulations adopted by the Supreme Court of Maryland or otherwise by law.

(b)      (1) The Chief Justice of the Supreme Court of Maryland shall be the administrative head of the Judicial system of the State. The Chief Justice of the Supreme Court of Maryland shall from time to time require, from each of the judges of the Circuit Courts, of the District Court and of any intermediate courts of appeal, reports as to the judicial work and business of each of the judges and their respective courts.

(2) Subject to paragraphs (3) and (4) of this subsection, the Chief Justice of the Supreme Court of Maryland may, in case of a vacancy, or of the illness, disqualification or other absence of a justice or judge or for the purpose of relieving an accumulation of business in any court assign any

36

justice or judge except a judge of the Orphans' Court to sit temporarily in any court except an Orphans' Court.

(3) A retired judge of the Circuit Court for Montgomery County that sits as the Orphans' Court for Montgomery County may be assigned by the Chief Justice of the Supreme Court of Maryland, upon approval of a majority of the Supreme Court of Maryland, to do an act that a judge of the Orphans' Court for Montgomery County is authorized to perform.

(4) A retired judge of the Circuit Court for Harford County that sits as the Orphans' Court for Harford County may be assigned by the Chief Justice of the Supreme Court of Maryland, upon approval of a majority of the Supreme Court of Maryland, to do an act that a judge of the Orphans' Court for Harford County is authorized to perform.

(5) Any justice or judge assigned by the Chief Justice of the Supreme Court of Maryland pursuant to this section has all the power and authority pertaining to a justice or judge of the court to which the justice or judge is so assigned; and the justice's or judge's power and authority shall continue with respect to all cases (including any motion, or other matters incidental thereto) which may come before the justice or judge by virtue of such assignment until the justice's or judge's action thereon shall be completed. In the absence of the Chief Justice of the Supreme Court of Maryland, the provisions of this section shall be applicable to the senior justice present in the Supreme Court of Maryland. The powers of the Chief Justice set forth in this section shall be subject to any rule or regulation adopted by the Supreme Court of Maryland.

1-201(a) of the Courts and Judicial Proceedings Article of the Maryland Annotated Code ("CJP"),[18] and Maryland Rule 19-308.5.[19]

Mr. Farmer also raises the defense of unclean hands. He alleges that the Commission: (1) failed to bring charges against others whom he claims had conflicts of interests similar to those alleged against him; (2) failed to tell him which rules he allegedly violated; (3) "misrepresented" legal standards in various filings; and (4) pursued this matter as retaliation for the complaint he filed against Mr. Kent. The hearing judge rejected all of

---

[18] CJP § 1-201(a) provides:

The power of the [Supreme Court of Maryland] to make rules and regulations to govern the practice and procedure and judicial administration in that court and in the other courts of the State shall be liberally construed. Without intending to limit the comprehensive application of the term "practice and procedure," the term includes the forms of process; writs; pleadings; motions; parties; depositions; discovery; trials; judgments; new trials; provisional and final remedies; appeals; unification of practice and procedure in actions at law and suits in equity, so as to secure one form of civil action and procedure for both; and regulation of the form and method of taking and the admissibility of evidence in all cases, including criminal cases.

[19] Rule 19-308.5 provides:

(1) An attorney admitted by the Supreme Court to practice in this State is subject to the disciplinary authority of this State, regardless of where the attorney's conduct occurs.
(2) An attorney not admitted to practice in this State is also subject to the disciplinary authority of this State if the attorney:
    (A) provides or offers to provide any legal services in this State,
    (B) holds himself or herself out as practicing law in this State, or
    (C) has an obligation to supervise or control another attorney practicing law in this State whose conduct constitutes a violation of these Rules.

38

these defenses, and having independently reviewed the record, we too find no merit to them.

Finally, Mr. Farmer alleges that he was deprived of due process when the hearing judge quashed his subpoena for a deposition of Bar Counsel. He sought the deposition of Bar Counsel to question her about, among other things, her relationship with Mr. Kent, her staff's relationship with Mr. Kent, whether Mr. Farmer irritated Bar Counsel by filing an ethics complaint against Mr. Kent and challenging her decision to dismiss the complaint against Mr. Kent, and whether Bar Counsel has an "inherent bias against out of state attorneys." The hearing judge quashed the subpoena to protect Bar Counsel from "'annoyance, embarrassment, oppression, or undue burden or cost' as any relevant testimony Bar Counsel could conceivably offer [was] privileged under the work-product doctrine." The hearing judge was well within her discretion to do so.

## SANCTION

Having overruled Mr. Farmer's exceptions and adopted the hearing judge's factual findings and conclusions of law, it falls upon us to determine the appropriate sanction. In doing so, we are mindful that the purpose of sanctioning an attorney is to protect the public from those unfit to practice law, not to punish the attorney. *Attorney Grievance Comm'n v. Karambelas*, 473 Md. 134, 176-77 (2021). We consider a variety of factors, including the rules that were violated, the mental state of the attorney, the injuries, if any, caused by the attorney's misconduct, and the relevant aggravating and mitigating factors. *Allenbaugh*, 450 Md. at 277.

39

The Commission, relying primarily on *Attorney Grievance Commission v. Lang*, 461 Md. 1 (2018), urges us to indefinitely suspend Mr. Farmer. In that case, we indefinitely suspended an out-of-state attorney who engaged in the unauthorized practice of law in two separate client matters, including negotiating a settlement in one matter and failing to timely move for pro hac vice admission or withdraw in the second. *Id.* at 15, 35. The attorney repeatedly represented himself as a Maryland attorney, made misrepresentations to Bar Counsel, and failed to disclose Bar Counsel's investigation when applying to the Maryland bar. *Id.* at 68.

Although Mr. Farmer insists that he committed no violations and therefore should not be sanctioned, he suggests that if this Court is inclined to sanction him, he should receive no more than a reprimand. He argues that indefinite suspensions are used in cases involving unauthorized practice of law for repeat offenders who had previously been suspended, unlawfully held themselves out as Maryland attorneys, made misrepresentations to clients, improperly used funds in trust accounts, or engaged in bad faith. He argues that none of those circumstances apply to him. With a touch of sarcasm, he claims that his "intentional and willful" conduct consisted only of properly moving for admission pro hac vice and immediately ceasing any work for Ms. Marsh once his motion was denied. And, he adds, "we would not be here if the Guardianship Court granted my pro hac vice application. It did not grant it through no fault of mine."

Mr. Farmer clearly does not grasp the nature and extent of his misconduct. Although he represented a vulnerable, elderly widow at the same time he was representing the widow's caretaker who was attempting to seize control over the widow's estate, he still

maintains there was no conflict of interest. Mr. Farmer still insists that he properly moved for admission pro hac vice in the guardianship case, even though Rule 19-217 plainly requires a sponsoring Maryland-licensed attorney to file the motion on his behalf. Mr. Farmer still insists he was not acting as a lawyer in representing Ms. Marsh, even though he filed papers on her behalf in a Maryland court, drafted estate planning documents, issued demands to her long-standing counsel and bank, had her sign a retainer agreement on his law firm letterhead, and issued invoices for "Legal Services Rendered."

When others failed to bend to his will, Mr. Farmer lashed out, sparing nobody. He filed an ethics complaint and federal lawsuit against Mr. Kent. He filed a regulatory complaint against Sandy Spring Bank. He accused Bar Counsel of waging a personal vendetta against him. He accused the hearing judge of bias, pointing to no evidence other than the fact that she credited the evidence against him. And at oral argument before this Court, he continued to insist that Mr. Kent had misappropriated funds as trustee, but could not point to a single shred of evidence supporting his allegations.[20] All of this reinforces the hearing judge's finding, as an aggravating factor, that Mr. Farmer refused to accept the wrongful nature of his conduct.

As noted above, the purpose of a sanction is to protect the public, not to punish the attorney. Pursuant to Maryland Rule 19-701(w), an indefinite suspension for an attorney

---

[20] According to Mr. Farmer, Rick's hospital-bed statement that the Trust had about five million dollars, combined with a brokerage statement indicating a balance of approximately four million dollars, supports the allegation that Mr. Kent misappropriated trust funds. Those two vague and unspecific data points, however, do not even remotely indicate wrongdoing.

not admitted to practice law in Maryland "means the . . . indefinite exclusion from the admission to or the exercise of any privilege to practice law in this State." Having considered the facts and circumstances and having applied the governing principles of law, we conclude that an indefinite suspension is the appropriate sanction for Mr. Farmer's misconduct. *See Attorney Grievance Comm'n v. Maiden*, 480 Md. 1, 23-24 (2022) (indefinitely suspending attorney for, *inter alia*, creating an impermissible conflict of interest between herself and her client); *Olszewski*, 441 Md. at 274-75 (sanctioning attorney with indefinite suspension for, *inter alia*, representing client in lawsuit against another client); *Attorney Grievance Comm'n v. Brisbon*, 422 Md. 625, 644, 646 (2011) (sanctioning attorney with indefinite suspension for, *inter alia*, the unauthorized practice of law); *Attorney Grievance Comm'n v. Brown*, 353 Md. 271, 296 (1999) (indefinitely suspending attorney for wrongful actions, including filing frivolous lawsuit).

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GEORGE L. FARMER**.