*Attorney Grievance Commission of Maryland v. Donald Dorin Davis*, AG No. 28, September Term, 2022.  Opinion by Eaves, J.

**ATTORNEY DISCIPLINE — SANCTION — INDEFINITE SUSPENSION**

Respondent, Donald Dorin Davis, violated several provisions of the Maryland Attorneys' Rules of Professional Conduct ("MARPC") when he failed to fully render agreed-upon legal services and communicate with his client; abandoned the client, forcing the client to seek successor counsel; failed to refund any unearned fees; made intentional misrepresentations to his client and the Attorney Grievance Commission of Maryland ("the Commission"); and failed to cooperate with the Commission during the investigatory process.

Respondent's conduct violated the following MARPC: 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.5 (Fees), 1.16 (Declining or Terminating Representation), 8.1 (Bar Admission and Disciplinary Matters), and 8.4 (Misconduct).  These violations warranted an indefinite suspension.

Circuit Court for Prince George's County
Case No. C-16-CV-22-000681
Argued: Oral argument waived/submitted on papers

IN THE SUPREME COURT
OF MARYLAND

AG No. 28

September Term, 2022

---

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

DONALD DORIN DAVIS

---

Fader, C.J.
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

---

Opinion by Eaves, J.

---

Filed: October 23, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

# I
# INTRODUCTION

On November 3, 2022, the Attorney Grievance Commission of Maryland ("Petitioner" or "the Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") in this Court, alleging that Donald Dorin Davis, Respondent, violated the following Maryland Attorneys' Rules of Professional Conduct ("MARPC")[1]:

- 19-301.1: Competence (1.1);
- 19-301.3: Diligence (1.3);
- 19-301.4: Communication (1.4);
- 19-301.5: Fees (1.5);
- 19-301.16: Declining or Terminating Representation (1.16);
- 19-308.1: Bar Admissions and Disciplinary Matters (8.1); and
- 19-308.4: Misconduct (8.4).

Pursuant to Maryland Rules 19-722(a) and 19-727(e), this Court referred the matter to the Circuit Court for Prince George's County and designated the Honorable Carol A. Coderre (the "hearing judge") to conduct an evidentiary hearing and provide findings of fact and conclusions of law. After a one-day hearing held on May 25, 2023,[2] the hearing judge found clear and convincing evidence that Respondent violated Rules 1.1; 1.3; 1.4; 1.5(a); 1.16(d); 8.1(a)–(b); and 8.4(a), (c), and (d). Neither Respondent nor the

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct, which employed the numbering format of the American Bar Association Model Rules, were renamed the MARPC and recodified without substantive modification in Title 19, Chapter 300 of the Maryland Rules. For ease of reference and comparison with our prior opinions and those of other courts, we will refer to the MARPC using the numbering of the model rules, as permitted by Rule 19-300.1(22).

[2] As will be discussed in greater detail, Respondent did not participate in much of the disciplinary process, including the evidentiary hearing.

Commission has filed exceptions with this Court. Petitioner recommends that we indefinitely suspend Respondent from the practice of law. For the reasons discussed below, we agree with the hearing judge's conclusions and with the Commission's recommendation.

Before discussing the hearing judge's findings of fact, we discuss some pertinent procedural history. On February 17, 2023, Bar Counsel served Petitioner with a copy of the Petition, interrogatories, and requests for both production of documents and admissions of fact and genuineness of documents, including 29 attached exhibits.[3] Having received no response, on March 20, 2023, Petitioner moved for an order of default, which the hearing judge granted. Despite the order of default, the hearing judge stated that she would allow the Commission to "present such evidence as it deem[ed] necessary to allow the [hearing judge] to carry out her assigned function as set forth in Maryland Rule 19-727." Respondent neither moved to vacate that order of default nor participated in the disciplinary hearing. Pursuant to Maryland Rule 2-424(b), the hearing judge deemed admitted the averments contained in Petitioner's request for admissions and subsequently issued her Findings of Fact and Conclusions of Law. No exceptions—from either party—have been filed, so we may treat the hearing judge's "findings of fact as established." Md. Rule 19-

---

[3] The hearing judge signed an order permitting alternate service after Bar Counsel made numerous, unsuccessful attempts to serve Respondent. When Bar Counsel asked if he would accept alternative service, Respondent indicated via a reply email that he was unaware of anyone trying to serve him in person, would accept service via mail, and was neither practicing law nor maintaining a law license in Maryland.

740(b)(2)(A); *see also Att'y Grievance Comm'n v. Parris*, 482 Md. 574, 585 (2023). We now summarize those findings.

## II
## THE HEARING JUDGE'S FINDINGS OF FACT

### A. *Background*

Respondent was admitted to the Maryland Bar in December 2019 and maintained an office for the practice of law in Washington, D.C., until sometime in 2021 when he closed that office due to hardships caused by the COVID-19 pandemic.[4]

### B. *Representation of Jeremy McGilvrey*

Jeremy McGilvrey and Natalie Treurniet (collectively referred to as "the Parents") had a child together—T.T.[5]—but the Parents never married. In November 2018, Mr. McGilvrey filed against Ms. Treurniet and in the Circuit Court for Montgomery County a complaint for custody, access, and visitation. The Parents eventually entered into a custody agreement whereby Ms. Treurniet would retain physical and legal custody of T.T.; the Parents agreed that Mr. McGilvrey would remain a *de facto* parent but consented to T.T.'s

---

[4] The hearing judge found that Respondent "closed his law practice and ceased practicing law[]" "sometime in 2020[.]" This finding was, however, an oversight by the hearing judge. As she also noted in her findings (discussed more fully below), Respondent was practicing law at least through January 6, 2021. Therefore, the closing of Respondent's law practice and the cessation of his practicing law could not have occurred until sometime in 2021.

[5] Consistent with our usual practice, we use initials to protect the identity of the minor child.

3

adoption by Ms. Treurniet's husband.[6] The latter point of agreement was conditioned on Mr. McGilvrey's ability to seek custody and visitation.

Believing that Ms. Treurniet was violating the custody agreement by impeding his reunification with T.T., Mr. McGilvrey retained Respondent on August 4, 2020, to assist in the "execution and fulfillment of" the Parents' custody agreement. Respondent's retainer agreement required a retainer of $3,000, and Mr. McGilvrey paid Respondent $2,500 via cashier's check that same day. To seek enforcement of the custody agreement, Respondent drafted for Mr. McGilvrey a motion alleging that Ms. Treurniet was in contempt of the court order enforcing that agreement (the "contempt motion"), and both Respondent and Mr. McGilvrey signed the contempt motion on December 15, 2020. In a January 6, 2021, email (the "January 6 email") to Mr. McGilvrey, Respondent knowingly and intentionally misrepresented that he filed that motion:

> You[r] motion was filed yesterday with the clerk. The clerk will review the document, confirm it is correct, accept it and then assign a judge. This takes a day. I will send you the stamped, accepted copy as soon as I receive it. Then we will get a scheduling notice and we can discuss next steps.

Respondent closed his law practice that same month shortly after sending the January 6 email due to constraints from the COVID-19 pandemic, but he never advised Mr. McGilvrey of that decision. On four different days in January 2021, Mr. McGilvrey attempted to contact Respondent, asking for an update on the contempt matter; Respondent never replied, and there was no further communication between the two. The hearing judge

---

[6] It is unclear from the AGC file whether any court granted Petitioner the status of a *de facto* parent or whether that simply was a term used by the Parents in the custody agreement.

4

also found that Respondent never provided any billing invoices to Mr. McGilvrey, nor did Respondent refund any portion of the $2,500 Mr. McGilvrey paid to Respondent.

## C.       *Bar Counsel's Investigation*

After Mr. McGilvrey filed a complaint with the Commission, Bar Counsel emailed Respondent on July 12, 2021, requesting a written response by July 27. Respondent replied on July 27, misrepresenting the scope of the work he performed for Mr. McGilvrey and claiming—without evidence—that his fees associated with the contempt matter exceeded the $2,500 Mr. McGilvrey paid. Thus, according to Respondent, Mr. McGilvrey was not owed a refund.

By an August 10 email, Bar Counsel requested within 14 days additional information from Respondent. Respondent did not comply, so Bar Counsel again sent its request on September 8 (via email and certified first-class mail), requesting a reply by September 22. Respondent replied that same day, indicating that he was in California, would be back in Maryland the following week, and, at that point, would review Bar Counsel's request. On September 29, Respondent provided incomplete responses and failed to provide any of the documents requested by Bar Counsel. Based on what little information Respondent did provide, however, the hearing judge found that Respondent knowingly and intentionally misrepresented to Bar Counsel that he never sent the January 6 email to Mr. McGilvrey.

On December 8 and 29, 2021, and January 7 and 27, 2022, Bar Counsel sent Respondent a request for additional information. The first three requests all were received by Respondent, but Bar Counsel never received a reply. Respondent replied to Bar

5

Counsel's January 27 request on February 4, but his responses were incomplete, and he indicated that all future requests should be sent via regular mail, as he no longer was monitoring his email address.

Dissatisfied with his February 4 responses, Bar Counsel sent on February 10 via regular mail a request for additional information with a reply date of February 25. Bar Counsel sent subsequent letters dated March 7 and April 21, but Respondent did not reply to any of those requests.

Additional facts will be discussed as necessary.

### III
### THE HEARING JUDGE'S CONCLUSIONS OF LAW

The hearing judge concluded that Respondent violated MARPC 1.1; 1.3; 1.4; 1.5(a); 1.16(d); 8.1(a)–(b); and 8.4(a), (c), and (d).

The hearing judge concluded that Respondent's failure to file the motion for contempt or communicate with Mr. McGilvrey constituted a violation of Rule 1.1. And as to Rule 1.3, the hearing judge relied on the same reasons for her conclusion as to the Rule 1.1 violation (as well as the reasons for Respondent's Rule 1.4 violation discussed immediately below).

According to the hearing judge, Respondent violated Rule 1.4 when he failed to (1) reply to Mr. McGilvrey's emails dated January 12, 13, 18, and 20, 2021, and (2) provide periodic billing statements to Mr. McGilvrey.

Although the hearing judge acknowledged that Respondent drafted the contempt motion for Mr. McGilvrey, she concluded that Respondent's failure to file the motion and

6

obtain any meaningful results for Mr. McGilvrey constituted a Rule 1.5(a) violation. The hearing judge also concluded that Respondent's failure to refund any portion of the $2,500 paid by Mr. McGilvrey also constituted a violation of Rule 1.5(a).

Concerning Rule 1.16(d), the hearing judge concluded that Respondent violated that Rule when he failed to notify Mr. McGilvrey that Respondent was shutting down his law practice and provide Mr. McGilvrey with sufficient time to retain successor counsel. Additionally, the hearing judge concluded that Respondent's failure to substantiate the time he spent on Mr. McGilvrey's matter, render any services of value, and issue a refund to Mr. McGilvrey all constituted a violation of Rule 1.16(d).

The hearing judge concluded that Respondent's September 29, 2021, correspondence to Bar Counsel, wherein he stated that he did not send the January 6 email to Mr. McGilvrey, was a knowing misrepresentation, constituting a violation of Rule 8.1(a). Respondent also violated Rule 8.1(b), the hearing judge concluded, when he routinely failed to reply to Bar Counsel's correspondences from August 2021 to April 2022.

Because the hearing judge concluded that Respondent violated numerous MARPC, she also concluded that he violated Rule 8.4(a). Respondent's knowing and intentional misrepresentation (in the January 6 email) to Mr. McGilvrey that Respondent filed the contempt motion also violated Rule 8.4(c). Lastly, the hearing judge concluded that Respondent violated Rule 8.4(d) by failing to (1) provide prompt and complete responses to Bar Counsel during the investigatory process; (2) keep Mr. McGilvrey apprised of his case; and (3) return unearned fees to Mr. McGilvrey after abandoning the representation.

7

The hearing judge concluded that these violations brought the legal profession into disrepute.

## IV
## STANDARD OF REVIEW

While this Court has original jurisdiction over an attorney disciplinary proceeding, *Att'y Grievance Comm'n v. Ekekwe*, 478 Md. 688, 708 (2022), we may refer the matter to any circuit court judge, Md. Rule 19-722(a), who then is required to issue written findings of fact and conclusions of law, Md. Rule 19-727(e). When we do so, this Court ordinarily analyzes a hearing judge's findings of facts using the clearly erroneous standard. *Att'y Grievance Comm'n v. White*, 480 Md. 319, 352 (2022); Md. Rule 19-740(b)(2)(B). As previously noted, however, because no exceptions were filed in this case, we "*may* treat the [hearing judge's] findings of fact as established[,]" Md. Rule 19-740(b)(2)(A) (emphasis added), and we exercise our discretion to do so in this case. We review the hearing judge's conclusions of law under the *de novo* standard (without deference), Md. Rule 19-740(b)(1), and Bar Counsel bears the burden of establishing by clear and convincing evidence a violation of the MARPC, Md. Rule 19-727(c).

## V
## RULE VIOLATIONS

We now conduct a *de novo* review of the hearing judge's legal conclusions based upon her established findings of fact.

### A. *Rule 1.1*

Rule 1.1 states: "An attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and

8

preparation reasonably necessary for the representation." "An attorney violates Rule 1.1 when he or she fails 'to apply the requisite thoroughness and/or preparation in representing a client . . . .'" *White*, 480 Md. at 366 (quoting *Att'y Grievance Comm'n v. Karambelas*, 473 Md. 134, 159 (2021)). A lack of such thoroughness and preparation, we have said, includes an outright failure to file necessary pleadings and motions. *Parris*, 482 Md. at 592 (citing *Att'y Grievance Comm'n v. Bellamy*, 453 Md. 377, 393 (2017)).

We agree with the hearing judge that Respondent violated Rule 1.1 because he failed, despite drafting the contempt motion, to formally initiate the matter with the circuit court for which he was retained. *See Att'y Grievance Comm'n v. Hoerauf*, 469 Md. 179, 208–09 (2020) (sustaining Rule 1.1 violation because attorney, among other things, "failed to file a motion for modification of sentence . . ., after informing [the client that] she would do so, and then failed to advise [the client] that she did not file such a motion[]"); *Att'y Grievance Comm'n v. Brady*, 422 Md. 441, 452 (2011) (sustaining Rule 1.1 violation where attorney, even though he filed both a complaint and amended complaint, failed to file a response to a motion to dismiss); *Att'y Grievance Comm'n v. Awuah*, 374 Md. 505, 522 (2003) ("Respondent violated Rule 1.1 when he failed to file the requisite appeal and/or motion to reconsider within the time period, which reflected a lack of skill and thoroughness."). In essence, Respondent failed to pursue any meaningful course of action for Mr. McGilvrey. *See Att'y Grievance Comm'n v. Aita*, 458 Md. 101, 118 (2018) (sustaining Rule 1.1 violation where attorney "fail[ed] to pursue any relief . . . all while allowing the client to rely on [the attorney's] representations that [the attorney] would do

so"). Thus, we agree with the hearing judge that clear and convincing evidence exists to support a violation of Rule 1.1.

**B.      Rule 1.3**

Rule 1.3 states that "[a]n attorney shall act with reasonable diligence and promptness in representing a client." "In its simplest form, an attorney violates Rule 1.3 when he or she does nothing whatsoever to advance the client's cause or endeavor." *White*, 480 Md. at 369 (internal quotation marks omitted) (quoting *Att'y Grievance Comm'n v. Moawad*, 475 Md. 424, 469 (2021)).

The hearing judge concluded that Respondent violated Rule 1.3 for the same reasons articulated for the Rule 1.1 violation (and Rule 1.4, as discussed below), and we agree. It is well settled in our jurisprudence that the facts that form the basis for a Rule 1.1 violation also may serve as the basis for a Rule 1.3 violation. *Att'y Grievance Comm'n v. Jones*, 484 Md. 155, 197 (2023); *Att'y Grievance Comm'n v. Hensley*, 467 Md. 669, 685 (2020); *Bellamy*, 453 Md. at 395. Thus, we likewise agree with the hearing judge that clear and convincing evidence exists to support a Rule 1.3 violation.

**C.      Rule 1.4**

In its entirety, Rule 1.4 states:

(a) An attorney shall:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0(g) (1.0), is required by these Rules;
>
> (2) keep the client reasonably informed about the status of the matter;
>
> (3) promptly comply with reasonable requests for information; and

10

(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

"Rule 1.4 is violated when an attorney communicates nothing or fails to communicate crucial information to the client regarding the status of a case." *Karambelas*, 473 Md. at 162. The hearing judge cited both Rule 1.4(a) and Rule 1.4(b), but she concluded that Respondent "violated Rule 1.4[]" without specifying any subsection. But her specific conclusions state that Respondent "failed to respond in any manner to Mr. McGilvrey's reasonable requests for information[]" and that Respondent's failure to communicate "severely limited[]" Mr. McGilvrey's "ability to make informed decisions about his case[.]" The former seems to speak to Rule 1.4(a), while the latter seems aimed at Rule 1.4(b). But whether the hearing judge's conclusion was made under subsection (a), subsection (b), or both is irrelevant. Respondent's conduct satisfies both subsections, and our sanction would not change even if the violation were predicated on only one subsection.[7]

---

[7] We made a similar point in *Attorney Grievance Commission v. Farmer* where the hearing judge concluded that, as to Rule 8.4, the attorney violated subsection (a). 484 Md. 107, 146 (2023). In its recommendation for sanction, Bar Counsel noted that, "[t]o the extent this Court finds that the hearing judge concluded the Respondent did not violate Rule 8.4(b) and (c), the[n] Petitioner excepts." *Id.* We noted that it was "unclear" whether the hearing judge made findings regarding violations of Rule 8.4(b) and (c). *Id.* Ultimately, "because resolution of the matter would not [have] affect[ed] the sanction in [that] case, we decline[d] to address the Commission's exception." *Id.* While no party has excepted here, our rationale and sentiment from *Farmer* apply all the same.

Mr. McGilvrey made four separate attempts in January 2021 to contact Respondent, and each time Respondent ignored Mr. McGilvrey's request for an update. Respondent ceased all communication with Mr. McGilvrey after Respondent's January 6 email. That conduct—or the lack thereof—violates Respondent's ethical requirement to keep Mr. McGilvrey reasonably informed about the status of Mr. McGilvrey's matter or promptly comply with Mr. McGilvrey's requests for information. Thus, clear and convincing evidence shows that Respondent violated Rule 1.4(a).

Respondent's failure to disclose to Mr. McGilvrey the closure of Respondent's law practice violated Rule 1.4(b) because it delayed and impeded Mr. McGilvrey from making informed decisions regarding Respondent's representation and whether Mr. McGilvrey should secure new counsel. This too is clear and convincing evidence that Respondent violated Rule 1.4(b).[8]

---

[8] We certainly agree with the hearing judge that an attorney *can* violate Rule 1.4 for failing to provide a client with periodic billing invoices, *Att'y Grievance Comm'n v. Green*, 441 Md. 80, 98–99 (2014); *see also Att'y Grievance Comm'n v. Brooks*, 476 Md. 97, 134 (2021) (sustaining Rule 1.4(a)(2) and 1.4(a)(3) violations where attorney did not provide estate beneficiaries invoices for six months despite "repeated requests for such accountings and [the attorney's] repeated assurances that he would provide them[]"); *Att'y Grievance Comm'n v. Rand*, 445 Md. 581, 628–29 (2015) (sustaining Rule 1.4 violation where attorney requested and received $1,000 to replenish initial retainer without providing client with agreed-upon invoices detailing services), but such a violation did not occur here. The hearing judge did not make any findings of fact regarding a request by Mr. McGilvrey to receive any billing invoices, and Respondent's retainer agreement does not contemplate that he would send to Mr. McGilvrey any such periodic billing invoices. Thus, we do not agree that Respondent's failure to provide periodic billing invoices was a violation of Rule 1.4 based on the record here. *See Att'y Grievance Comm'n v. Conwell*, 462 Md. 437, 461–62 (2019) (overruling Bar Counsel's exception that Respondent did not violate Rule 1.4 because the client did not request invoices regarding escalating fees, and the retainer agreement did not contemplate that the client would receive automatic statements).

12

## D.  *Rule 1.5*

Rule 1.5(a) states in its entirety:

An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.  The factors to be considered in determining the reasonableness of a fee include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

> (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and

> (8) whether the fee is fixed or contingent.

"An advance fee given in anticipation of legal service that is reasonable at the time of the receipt can become unreasonable if the attorney does not perform the agreed-upon services."  *Att'y Grievance Comm'n v. Smith-Scott*, 469 Md. 281, 344–45 (2020) (quoting *Att'y Grievance Comm'n v. Blair*, 440 Md. 387, 403 (2014)).  Failing to earn the fee itself, along with a failure to refund any unearned portion of the fee, can constitute a Rule 1.5(a)

violation. *Id.* at 345 (citing *Att'y Grievance Comm'n v. Garrett*, 427 Md. 209, 224–25 (2012)).

We agree with the hearing judge that, although Respondent drafted the initial contempt motion, Respondent's combined failure to file the motion and to refund any portion of the $2,500 fee transformed what initially may have been a reasonable fee into an unreasonable one. Respondent was retained to assist in the "execution and fulfillment of [a] 'parentage agreement'" between the Parents. While the motion for contempt arguably has some value with respect to a fee for legal services, Respondent's failure to file that motion left Mr. McGilvrey without the services for which he bargained. *See Att'y Grievance Comm'n v. Miller*, 467 Md. 176, 217 (2020) (sustaining Rule 1.5(a) violation where attorney's work "failed to culminate in obtaining any meaningful results on behalf of" the client). Respondent's failure to then refund any portion of the $2,500 also supports a Rule 1.5(a) violation. *See Jones*, 484 Md. at 208 (holding that attorney violated Rule 1.5(a) where he failed to refund an appropriate portion of a flat fee after his services were terminated). Clear and convincing evidence exists to support a Rule 1.5(a) violation.

## E. *Rule 1.16*

Rule 1.16(d) states:

> Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

"An attorney violates Rule 1.16(d) when the attorney abandons representation of a client,

14

fails to return records, and refuses to communicate with the client or successor counsel."
*Att'y Grievance Comm'n v. Viladegut*, 473 Md. 38, 61 (2021).

We agree with the hearing judge that Respondent violated Rule 1.16(d). First, Respondent completely abandoned Mr. McGilvrey immediately after sending the January 6 email despite Mr. McGilvrey's multiple attempts to contact Respondent. Respondent gave no notice to Mr. McGilvery that Respondent was terminating his law practice and contravened the heart of Rule 1.16(d). Second, as noted above, Respondent failed to return any unearned portion of the $2,500 fee. This too constitutes a violation of Rule 1.16(d). *See Att'y Grievance Comm'n v. Wescott*, 483 Md. 111, 126 (2023) ("Considering our conclusion that Mr. Wescott did not earn the $7,000 fee that he collected from [the client] and did not return any portion of that fee to [the client] after his representation was terminated, Mr. Wescott violated Rule 1.16(d)."); *Att'y Grievance Comm'n v. Taniform*, 482 Md. 272, 313 (2022) ("We find that clear and convincing evidence supports the hearing judge's conclusion that Mr. Taniform violated Rule 1.16(d) by failing to return unearned fees."). Thus, we are satisfied that clear and convincing evidence exists to support that Respondent violated Rule 1.16(d).

### F.    *Rule 8.1*

Rule 8.1 provides that

[a]n applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a

15

lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

"An attorney violates [Rule 8.1(a)] when they have 'knowingly misrepresented material facts in response to Bar Counsel's requests for information.'" *Att'y Grievance Comm'n v. O'Neill*, 477 Md. 632, 652 (2022) (quoting *Att'y Grievance Comm'n v. Yi*, 470 Md. 464, 497 (2020)). A Rule 8.1(b) violation "occurs when an attorney fails to timely respond to lawful requests for information from Bar Counsel." *Id.*

The hearing judge found that Respondent "knowingly and intentionally misrepresented to Bar Counsel that he did not send the January 6, 2021[,] email to Mr. McGilvrey." As noted, because no exceptions have been filed in this case, that finding is deemed established. *See* Md. Rule 19-740(b)(2)(A). We hold that there is clear and convincing evidence to support the Rule 8.1(a) violation.

As to the Rule 8.1(b) violation, the hearing judge concluded that, due to his July 27, 2021, reply to Mr. McGilvrey's complaint, Respondent "was aware that Bar Counsel was conducting an investigation" into his conduct. Thus, Respondent's decision—on multiple occasions—to ignore Bar Counsel's requests for information and documents, as well as his, at best, incomplete responses, constitute a Rule 8.1(b) violation. *See Att'y Grievance Comm'n v. Shuler*, 454 Md. 200, 215 (2017) (sustaining Rule 8.1(b) violation where attorney failed to "meaningfully answer" correspondence from Bar Counsel based on attorney's belated and "incomplete" answers).

Thus, we agree with the hearing judge that clear and convincing evidence exists to support a violation of both Rule 8.1(a) and 8.1(b).

16

## G.   *Rule 8.4*

In pertinent part, Rule 8.4 states that

[i]t is professional misconduct for an attorney to:

(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\*       \*       \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]

(d) engage in conduct that is prejudicial to the administration of justice[.]

"Plainly and simply, an attorney violates 'Rule 8.4(a) when he or she violates other Rules of Professional Conduct.'" *White*, 480 Md. at 381 (quoting *Att'y Grievance Comm'n v. Powers*, 454 Md. 79, 107 (2017)).  By virtue of Respondent's other sustained violations herein, we agree with the hearing judge that Respondent also violated Rule 8.4(a).

Rule 8.4(c) "applies to a 'broad universe' of misconduct." *Att'y Grievance Comm'n v. Daley*, 476 Md. 283, 304 (2021) (quoting *Att'y Grievance Comm'n v. McDonald*, 437 Md. 1, 39 (2014)).  Simply making a false statement that an attorney knows to be untrue is enough to constitute conduct involving a misrepresentation and thus a violation of Rule 8.4(c).  *Karambelas*, 473 Md. at 167–68; *Att'y Grievance Comm'n v. Young*, 473 Md. 94, 124 (2021).  The hearing judge found that Respondent knowingly and intentionally misrepresented in the January 6 email that Respondent filed the contempt motion, which constituted a violation of Rule 8.4(c).  We agree that this satisfies Petitioner's burden to prove this violation by clear and convincing evidence.  We also hold that, by virtue of Respondent's 8.1(a) violation, he also violated Rule 8.4(c).  *See Daley*, 476 Md. at 304

17

("We have previously held that violations of Rule 8.1(a) also constitute violations of Rule 8.4(c).").

For purposes of Rule 8.4(d), whether conduct is prejudicial to the administration of justice "turns on whether the conduct would negatively impact [the] perception of the legal profession of a reasonable member of the public[.]" *Att'y Grievance Comm'n v. Maiden*, 480 Md. 1, 18–19 (2022) (alterations in original) (citations and internal quotation marks omitted). The hearing judge concluded that Respondent's failure to (1) provide prompt and complete responses to Bar Counsel, (2) keep Mr. McGilvrey abreast of his case, and (3) refund any unearned fees all was conduct that was prejudicial to the administration of justice. All that conduct having been established, *see* Md. Rule 19-740(b)(2)(A), our caselaw supports that each instance is enough, alone, to support a Rule 8.4(d) violation. *See Blair*, 440 Md. at 404 ("An attorney can also violate 8.4(d) by failing to pursue his or her client's objectives, failing to communicate with his or her client, *or withholding unearned fees*." (emphasis added)); *Att'y Grievance Comm'n v. Fox*, 417 Md. 504, 538 (2010) (sustaining Rule 8.4(d) violation where attorney "failed to respond in a timely manner to Bar Counsel's inquiries"); *Att'y Grievance Comm'n v. Reinhardt*, 391 Md. 209, 222 (2006) ("Failure to represent a client in an adequate manner and lying to a client constitute a violation of Rule 8.4(d)."). Thus, clear and convincing evidence supports the Rule 8.4(d) violation.

# VI
## AGGRAVATING AND MITIGATING FACTORS

So that we may "devis[e] the appropriate sanction[,]" we consider in every attorney

disciplinary matter the presence of any aggravating or mitigating factors. *Att'y Grievance Comm'n v. Bonner*, 477 Md. 576, 584 (2022).

## A. Aggravating Factors

Aggravating factors are ones that "militate in favor of a more severe sanction." *Att'y Grievance Comm'n v. Culberson*, 483 Md. 294, 324 (2023) (citation and internal quotation marks omitted). It is Petitioner's burden to prove any aggravating factor by clear and convincing evidence. *White*, 480 Md. at 386; Md. Rule 19-727(c).

The hearing judge found the presence of eight aggravating factors: a dishonest or selfish motive, a pattern of misconduct, multiple rule violations, bad faith obstruction of the disciplinary proceeding, submission of false evidence or statements, a refusal to acknowledge the misconduct's wrongful nature, indifference to making restitution, and a likelihood of repeating the misconduct.

The hearing judge concluded that Respondent evinced a selfish or dishonest motive when he made a knowing and intentional misrepresentation to Mr. McGilvrey regarding the status of the contempt motion; and failed to notify Mr. McGilvrey of the closure of Respondent's law practice, engage in the services for which he was retained, and refund any unearned fees. The hearing judge likewise concluded that this conduct constituted a "sustained course of misconduct" and that Respondent committed multiple rule violations.

The hearing judge concluded that Respondent engaged in bad faith obstruction of the disciplinary proceeding by "intentionally failing to comply with the rules and orders of the disciplinary agency" and the circuit court. Specifically, Respondent did not timely and completely fulfill any of Bar Counsel's requests or participate in the disciplinary process.

19

Respondent made false statements to both Bar Counsel and Mr. McGilvrey, and he "displayed a complete refusal to acknowledge the wrongful nature of his conduct and has failed to demonstrate remorse." According to the hearing judge, Respondent's failure to both respond to Bar Counsel or refund unearned fees demonstrates that he does not "accept responsibility for his misconduct and illustrate[s] that he is indifferent to making restitution."

Lastly, due to the "breadth and extent of the misconduct and Respondent's refusal to acknowledge the misconduct's wrongful nature[,]" the hearing judge concluded that Respondent was likely to repeat his misconduct.

For the reasons articulated by the hearing judge, and because we have sustained all MARPC violations, as alleged by the Commission, we conclude that clear and convincing evidence exists to support the presence of the articulated aggravating factors.[9]

## B.     *Mitigating Factors*

On the other hand, mitigating factors counsel "in favor of a less severe sanction." *Att'y Grievance Comm'n v. Trezevant*, 484 Md. 34, 54 (2023). Respondent must prove any mitigating factor by a preponderance of the evidence. *White*, 480 Md. at 386; Md.

---

[9] We make one minor, clarifying point. The hearing judge concluded that an applicable aggravating factor was Respondent's bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the Maryland Rules or orders from the circuit court. The hearing judge, however, cited as facts to support that aggravating factor only Respondent's failure to completely and timely respond to Bar Counsel's lawful requests. The hearing judge made no findings regarding whether Respondent intentionally violated any order from the circuit court. Thus, we agree with the hearing judge's conclusion that this aggravating factor applies, but only because Respondent flouted Bar Counsel's requests—not as to a violation of any order from the circuit court.

Rule 19-727(c).

Because Respondent did not participate in the disciplinary process or appear for the disciplinary hearing, the hearing judge found that Respondent did not prove by a preponderance of the evidence any mitigating factor. We agree. The burden allocated to Respondent to prove any applicable mitigation necessarily contemplates, at the very least, appearance at and involvement in the evidentiary hearing. Indeed, we have stated that "the availability for consideration of mitigating factors cannot be undertaken where an attorney neither attends his or her evidentiary hearing nor responds to Bar Counsel's requests for written responses to the client's complaint[.]" *Att'y Grievance Comm'n v. Kremer*, 432 Md. 325, 340 (2013). Thus, "[m]itigation usually is not on the table" if the attorney fails to provide "supporting evidence of the existence of [any mitigating] factors." *Id.* at 339. It follows that, where the attorney elects not to appear for his or her evidentiary hearing, he or she forgoes the opportunity to submit any such evidence. Thus, there are no mitigating factors applicable for our consideration.

## VII
## THE SANCTION

In fashioning the appropriate sanction, we must consider "the facts and circumstances of each particular case, including consideration of any mitigating [and aggravating] factors." *Bonner*, 477 Md. at 607 (quoting *Miller*, 476 Md. at 223). Our goal is not to punish the attorney; rather, we are guided—primarily—by "our interest in protecting the public and the public's confidence in the legal profession[,]" *id.* (quoting *McDonald*, 437 Md. at 45), as well as our need to "effect general and specific deterrence[]"

21

of future rule violations, *id.* (quoting *Att'y Grievance Comm'n v. Shapiro*, 441 Md. 367, 395 (2015)).

The Commission asks that we indefinitely suspend Respondent, primarily claiming support for such a sanction from our opinion in *Attorney Grievance Commission v. Kirwan*, 450 Md. 447 (2016). We agree that *Kirwan* is sufficiently analogous to provide a basis for the sanction of an indefinite suspension without specifying a time at which Respondent may petition for reinstatement to the Bar of Maryland.

In *Kirwan*, the attorney violated the same rules that Respondent has here, except for Rules 1.5(a), 8.1(a) and 8.4(c). 450 Md. at 454. There, the attorney failed to "take any meaningful action towards pursuing her client's claim[,]" which resulted in the claim being barred by the statute of limitations, *id.* at 458, and "responded to only one of [her client's] numerous attempts to contact her from December 2013 to September 2014[,]" failing to provide any further updates, *id.* at 460. The attorney in *Kirwan* also abandoned her client when she ignored the client's inquiry into whether the attorney was still handling the matter and refused to communicate with successor counsel. *Id.* at 461–62. The attorney failed to respond to four letters from Bar Counsel, and the manner in which she handled her client's case was prejudicial to the administration of justice. *Id.* at 462, 463. In *Kirwan*, five aggravating factors were present (almost all overlapping with Respondent's), and the attorney likewise presented no evidence of any mitigating factors. *Id.* at 463–66. We sanctioned the attorney with an indefinite suspension without specifying a minimum time before application for reinstatement because her actions did "not involve dishonesty," *id.* at 466, and because there was "nothing in the record that would allow this Court to 'divine

22

an appropriate minimum "sit-out" period[,]'" *id.* at 467 (quoting *Green*, 441 Md. at 102).

True enough, Respondent's conduct, as far as we can tell, did not result in the permanent prejudice that the client in *Kirwan* suffered. *See id.* at 458. Fortunately, despite Respondent's lack of competence, diligence, and communication, Mr. McGilvrey was able to retain successor counsel, and there is no evidence that Respondent's actions resulted in any permanent prejudice vis-à-vis the contempt motion. *See id.* Nevertheless, unlike the attorney in *Kirwan*, Respondent's violations *entail* dishonesty—to both his client and the Commission. *See id.* at 466. Additional aggravating factors that are present here but absent from *Kirwan* are Respondent's refusal to acknowledge his misconduct's wrongful nature and a likelihood that he would repeat his misconduct. *See id.* at 463–65. Lastly, as Respondent was almost wholly absent from the disciplinary process, we likewise have no evidence in the record from which we can discern an appropriate amount of time that Respondent should be suspended from the practice of law. *See id.* at 467; *see also Att'y Grievance Comm'n v. Ibebuchi*, 471 Md. 286, 310 (2020) (noting that the Court could not discern an appropriate "sit-out" time); *Att'y Grievance Comm'n v. Moore*, 447 Md. 253, 274 (2016) ("[W]e decline to set a minimum length for this indefinite suspension, because we cannot say with any certainty how long it will take for Mr. Moore to make the necessary progress toward being able to handle intimidating or confrontational situations with techniques other than avoidance. It may be soon, or it may be never."); *Green*, 441 Md. at 102 ("Because there is nothing in the record plumbing the reasons for Green's misconduct or the likelihood that recidivism is not a concern, . . . an open-ended indefinite suspension is appropriate.").

Thus, we are satisfied that the conduct we sanctioned in *Kirwan*—while slightly differing from Respondent's—is sufficiently analogous to Respondent's conduct to merit the same sanction: an indefinite suspension without specifying a minimum duration of time after which Respondent may petition for reinstatement to the Bar of Maryland.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DONALD DORIN DAVIS**.